UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| TAMELA B.,[1] | : | Case No. 3:23-cv-00319 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ORDER**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in September 2021. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

I.  **BACKGROUND**

Plaintiff asserts that she has been under a disability since February 1, 2019. She was forty-six years old on the alleged disability onset date, and forty-nine years old when the ALJ issued his decision. Accordingly, Plaintiff was considered a "younger person" under the applicable regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a limited education. 20 C.F.R. § 404.1564(b)(3).

The evidence in the Administrative Record ("AR," Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-2 at PageID 45-74), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

II. **STANDARD OF REVIEW**

The Social Security Administration (SSA) provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since February 1, 2019, the alleged onset date.

Step 2: She has the severe impairments of obesity, Sjogren's syndrome, asthma, tarsal tunnel syndrome, Pes Cavus, osteoarthritis of the feet and hips, bursitis of the hips, cervical and lumbar degenerative disc disease, fibromyalgia, anxiety, and depression.

4

| | |
|---|---|
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "can lift and/or carry [twenty] pounds occasionally and [ten] pounds frequently; can stand and/or walk for about [four] hours and sit for about [six] hours in an [eight-]hour workday; can frequently push and/or pull with lower left extremity; can never climb ladders ropes and scaffolds; can occasionally climb ramps and stairs, balance, and crawl; can frequently stoop, kneel and crouch; no fine detail work, meaning can tolerate occasional near acuity; can frequently handle and finger bilaterally; can tolerate occasional concentrated exposure to extreme heat, extreme cold, humidity, dusts, odors, fumes, and pulmonary irritants; should avoid unprotected heights, dangerous machinery and commercial driving; can perform simple routine tasks but not at a production rate pace and without strict performance quotas; can have occasional interaction with supervisors, co-workers and the general public; and can tolerate occasional changes to a routine work setting defined as [one to two] per week."<br><br>She is unable to perform any of her past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. |

(Decision, Doc. No. 6-2 at PageID 50-66.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 66.)

### C. The ALJ's Hypothetical And Vocational Expert Testimony

The ALJ posed the following question to the vocational expert (VE) at the July 2022 hearing:

5

> So, assume a hypothetical individual with the same age [and] education as [Plaintiff], with the residual functional capacity to lift and/or carry [twenty] pounds occasionally and [ten] pounds frequently. Can stand and/or walk for about four hours and sit for about six hours in an eight-hour workday. Can frequently push and/or pull with the lower left extremity. Can never climb ladders, ropes[,] and scaffolds. Can occasionally climb ramps and stairs, balance[,] and crawl. Can frequently stoop, kneel[,] and crouch. No fine detail work.[3] Can frequent[ly] handle and finger bilaterally. Can tolerate occasional[,] concentrated exposure to extreme heat, extreme cold, humidity, dust, odors, fumes[,] and pulmonary irritants. Should avoid unprotected heights, dangerous machinery[,] and commercial driving. Can perform simple, routine tasks, but not at a production-rate pace, and without strict performance quotas. Can have occasional interaction with supervisors, coworkers[,] and the general public, and could tolerate occasional changes to a routine work setting[,] defined as one to two per week.

(AR, Doc. No. 6-2 at PageID 99-100.)

The VE responded that such an individual could not perform Plaintiff's past work but could perform "other occupations." (AR, Doc. No. 6-2 at PageID 102.) For example, the VE stated that such an individual could perform the following light, unskilled jobs: School Bus Monitor, Dictionary of Occupational Titles (DOT) code 372.667-042, approximately 45,000 positions nationally; Laundry Folder, DOT code 361.687-014, approximately 90,000 positions nationally; and Housekeeper, DOT code 361.687-014, approximately 140,000 positions nationally. (*Id.* at PageID 103.)

The ALJ asked the VE whether her testimony was consistent with the information contained in the DOT and its companion publication, the Selected Characteristics of Occupations. (AR, Doc. No. 6-2 at PageID 104.) The VE responded: "The DOT is silent

---

[3] The VE asked the ALJ to "elaborate" on this limitation, and the ALJ replied that such an individual could tolerate "occasional near acuity." (AR, Doc. No. 6-2 at PageID 100-01.)

6

regarding breaks, off task, absenteeism, being on your feet [for] only four hours for light work . . . [and] occasional changes only of one to two per week. For those issues, instead I'm relying on my education, training[,] and placement history." (*Id.*)

The ALJ cited to this testimony to support his Step Five conclusion that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Decision, Doc. No. 6-2 at PageID 65-66.) The ALJ explained that he accepted the VE's testimony and her explanation regarding the conflicts between her testimony and the DOT:

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT) with the exception of the reduced standing and walking limitation and occasional workplace changes, which the DOT does not address. However, the undersigned has relied upon the vocational expert's education and expertise in accepting her testimony regarding the reduced standing and walking limitation and occasional workplace changes (Ex. 20E).

(*Id.* at PageID 65.)

IV.  **LAW AND ANALYSIS**

Plaintiff asserts that the ALJ erred when he concluded at Step 5 that Plaintiff can perform other work in the national economy because: 1) the ALJ failed to reconcile apparent conflicts between the VE's testimony at the DOT; 2) caselaw supports a conclusion that the RFC limitation to four hours of standing and walking precludes the performance of the Housekeeper job; and 3) the ALJ failed to consider Plaintiff's claim under the rules for a "borderline age situation." (SE, Doc. No. 9 at PageID 2088-91.) For

7

the reasons discussed below, Plaintiff's assertions are not well-taken and the ALJ's decision shall be affirmed.

      A.      **The ALJ's Step Five Finding Is Supported By Substantial Evidence.**

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c). The ALJ must base the RFC on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). This includes objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Once an ALJ determines that a plaintiff's RFC prevents the performance of her past relevant work, the burden shifts to the Commissioner to show that the plaintiff is able to "perform other substantial gainful activity that exists in the national economy." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations omitted). To meet this burden, the ALJ must find that a plaintiff has the "vocational qualifications to perform specific jobs," and this finding must be "supported by substantial evidence." *O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978) (citation omitted). An ALJ may also rely on the testimony of a vocational expert (VE). 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e). "Substantial evidence may be produced through reliance on the testimony of a VE in response to a 'hypothetical' question, but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Varley*, 820 F.2d at 779 (6th Cir. 1987) (citations omitted).

As an initial matter, Plaintiff does not challenge the ALJ's RFC or allege that the limitations do not accurately portray her impairments. Instead, Plaintiff challenges the ALJ's reliance on the VE's testimony and claims that the ALJ failed to resolve apparent conflicts between the VE's testimony and the DOT. (SE, Doc. No. 9 at PageID 2088-89.) Plaintiff asserts that the RFC limitation for occasional interaction with supervisors, coworkers, and the general public conflicts with the DOT's description of the School Bus Monitor job, which indicates that the job requires frequent talking.[4] (SE, Doc. No. 9 at PageID 2088 (citing DICOT 372.667-042, 1991 WL 673102 (4th ed., Rev. 1991)).) Plaintiff further contends that the RFC limitation for occasional near acuity conflicts with the DOT's description of the Laundry Folder job, which indicates that the job requires frequent near acuity. (*Id.* (citing DICOT 361.687-014, 1991 WL 672991(4th ed, Rev. 1991)).) According to Plaintiff, the ALJ erred because the VE did not address the conflicts at the hearing, and the ALJ did not explain the conflicts in the decision. (*Id.* at PageID 2089.)

These arguments are not well-taken. Under the Social Security Ruling (SSR)[5] that was in effect at the time of the ALJ's decision,[6] an ALJ who is faced with an unresolved

---

[4] The DOT defines "occasionally" as activity that occurs up to one-third of the time, and "frequently" means that the activity exists from one-third to two-third of the time. DOT *Appendix C – Components of the Definition Trailer*, 1991 WL 688702 (4th ed., Rev. 1991).

[5] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

[6] The Court notes that the SSA rescinded SSR 00-4p on January 6, 2025 and replaced it with SSR 24-3p. 2025 SSR LEXIS 1 (S.S.A. Jan. 6, 2025). ALJs are "no longer require[d] . . . to identify and resolve conflicts between occupational information provided by . . . VEs and information in the DOT." *Id.* at *3. The SSA explained that "the DOT is not the only reliable source of occupational information" and "the

9

conflict between VE evidence and the DOT must "elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 SSR LEXIS 8, at *4-5 (S.S.A Dec. 4, 2020). The ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information. *Id.* at *5. Additionally, the ALJ "will explain in the determination or decision how he or she resolved the conflict." *Id.* at *9.

However, "[t]he Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a [VE], at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of SSA*, No. 1:11-CV-1290, 2012 U.S. Dist. LEXIS 136097, at *11 (N.D. Ohio Sept. 24, 2012) (citing *West v. Comm'r of Soc. Sec.*, No. 2:11-CV-448, 2012 WL 3151209, at *6 (S.D. Ohio Aug. 2, 2012) (McCann King, M.J.), *report and recommendation adopted*, No. 2:11-CV-448, 2012 WL 3728011 (S.D. Ohio Aug. 28, 2012) (Marbley, D.J.); *Hammond v. Comm'r of Soc. Sec.*, 116 F.3d 1480 (table), 1997 WL 338719, at *7 (6th Cir. June 18, 1997) (plaintiff waived argument objecting to jobs identified by the vocational expert where plaintiff failed to raise it during the administrative hearing); *Dantzer v. Comm'r of Soc. Sec.*, No. 3:09-CV-2198,

---

requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified, and the requirements of SSR 00-4p might discourage . . . VEs from using occupational data in sources other than the DOT." *Id.* at *3-4. The new ruling further states that the SSA "expect[s] the [claimant's] representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." *Id.* at *8.

2011 WL 1113458, at *13 (N.D. Ohio Jan. 4, 2011), *report and recommendation adopted*, No. 3:09-CV-2198, 2011 WL 1113446 (N.D. Ohio Mar. 24, 2011); *Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001)); *see also Beinlich v. Comm'r of Soc. Sec.*, No. 08–4500, 345 F. App'x 163, at *168–69 (6th Cir. Sept. 9, 2009) (plaintiff's counsel had the obligation to "bring out any conflicts with the DOT").

Here, the ALJ satisfied his obligation under SR 00-4p when he asked the VE whether her testimony was consistent with the information in the DOT and the SCO. (AR, Doc. No. 6-2 at PageID 104.) The ALJ had no additional duty to further question the VE or to "conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x. 369, 374 (6th Cir. 2006)). Plaintiff had the opportunity, through her counsel, to cross-examine the VE and present evidence of a conflict between the VE's testimony and the information in the DOT. But she did not do so. (*See* AR, Doc. No. 6-2 at PageID 104-05.) That failure constitutes a waiver of the issue in this Court. *See Beinlich,* 345 F. App'x at *168–69.

Moreover, even if the ALJ erred by failing to elicit further testimony from the VE to resolve the apparent conflict, the Court concludes that a remand would result in the same result at Step Five. Therefore, the alleged error is harmless. *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. Appx. 517, 520 (6th Cir. Dec. 19, 2011) (remanding "would be an idle and useless formality" if "there is [no] reason to believe that [it] might lead to a different result") (citing *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004)); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of

11

administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").

Next, Plaintiff challenges the ALJ's finding that Plaintiff can perform the Housekeeper job. Plaintiff argues that "the weight of caselaw nationally supports the conclusion that a claimant limited to standing and/or walking for about [four] hours in an [eight]-hour workday cannot work full-time as a housekeeping cleaner, as this position requires more than [four] hours of standing in an [eight]-hour workday." (SE, Doc. No. 9 at PageID 2089 (citing DICOT 323.687-014, 1991 WL 672783 (4th ed., Rev. 1991)).) This assertion is also not well-taken.

In the cases cited by Plaintiff, courts merely cited to VE testimony that was in the administrative record, and did not decide the issue. In other words, the issue of whether the Housekeeper job could be performed with a four-hour standing/walking limitation was not actually before these courts. *Gelhausen v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV2311, 2015 WL 1188809, at *5 (N.D. Ohio Mar. 16, 2015); *Orewiler v. Comm'r of Soc. Sec.*, No. 1:20-CV-02589-DAR, 2022 WL 2610467, at *2-3 (N.D. Ohio Mar. 25, 2022), *report and recommendation adopted sub nom. Orewiler v. Kijakazi*, No. 1:20-CV-02589, 2022 WL 3586588 (N.D. Ohio Aug. 22, 2022); *Killings v. Colvin*, No. 1:15-CV-1290, 2016 WL 2868699, at *9-10 (N.D. Ohio May 17, 2016); *Ulrich v. Comm'r of Soc. Sec.*, No. 5:21-CV-00383-PAG, 2022 WL 3030685, at *6 (N.D. Ohio June 6, 2022), *report and recommendation adopted sub nom. Ulrich v. Comm'n of Soc. Sec.*, No. 5:21 CV 383, 2022 WL 3028096 (N.D. Ohio Aug. 1, 2022); *Akram v. Acting Comm'r of Soc. Sec. Admin.*, No. 8:21-CV-1948-MCR, 2023 WL 2237869, at *5 (M.D. Fla. Feb. 27,

2023); *H. v. O'Malley*, No. 4:23-CV-28, 2023 WL 9425546, at *3 (E.D. Va. Jan. 5, 2023), *report and recommendation adopted sub nom. Virginia H. v. Martin O'Malley Comm'r of Soc. Sec. Admin.*, No. 4:23CV28, 2024 WL 287699 (E.D. Va. Jan. 25, 2024); *Addison v. Kijakazi*, No. 5:21-1796-KDW, 2022 WL 4103147, at *3 (D.S.C. Sept. 8, 2022); *Geer v. Kijakazi*, No. 0:21-243-PJG, 2022 WL 278459, at *5 (D.S.C. Jan. 31, 2022); *Stoner v. Saul*, No. 5:19-2595-BHH-KDW, 2020 WL 6469940, at *3 (D.S.C. Oct. 21, 2020), *report and recommendation adopted*, No. 5:19-2595-BHH, 2020 WL 6468608 (D.S.C. Nov. 3, 2020); *Brown v. Saul*, No. 1:20-182-MGL-SVH, 2020 WL 10618578, at *9 (D.S.C. Oct. 21, 2020), *report and recommendation adopted*, No. 1:20-182-JD, 2021 WL 3046845 (D.S.C. July 20, 2021); *Clancy v. Saul*, No. 5:18-1992-CMC-KDW, 2019 WL 4777007, at *4 (D.S.C. Sept. 12, 2019), *report and recommendation adopted*, No. 5:18-1992-CMC, 2019 WL 4750192 (D.S.C. Sept. 30, 2019); *Housby v. Colvin*, No. 5:14-CV-1567, 2015 WL 1021358, at *12-13 (S.D. W. Va. Feb. 4, 2015), *report and recommendation adopted*, No. 5:14-CV-01567, 2015 WL 1034151 (S.D. W. Va. Mar. 9, 2015); *Furlow v. Comm'r of Soc. Sec.*, No. 2:12-cv-203-FTM-DNF, 2013 WL 4494990, at *3 (M.D. Fla. Aug. 19, 2013); *Foch v. Colvin*, No. 4:13cv92, 2014 WL 3640745, at *4 (E.D. Va. July 22, 2014); *Goodman v. Berryhill*, No. C17-5115 BAT, 2017 WL 4265685, at *8 (W.D. Wash. Sept. 25, 2017), *aff'd*, 741 F. App'x 530 (9th Cir. 2018); *Kathleen A. v. Comm'r Soc. Sec. Admin.*, No. 6:20-CV-00521-YY, 2021 WL 2313199, at *7 (D. Or. June 7, 2021).

Moreover, as Defendant correctly points out, there is no requirement that an ALJ is bound by—or must even consider—VE testimony in other cases. (*See* Mem. In Opp.,

13

Doc. No. 11 at PageID 2101-02.) Instead, as discussed above, SSR 00-4p only requires an ALJ to inquire on the record whether a VE's testimony conflicts with information in the DOT. 2000 SSR LEXIS 8, at *4-5 (S.S.A Dec. 4, 2020). When a VE identifies a conflict, an ALJ is then required to seek a "reasonable explanation" for the conflict from the VE and explain the resolution of the conflict in the written decision. *Id.* at *5-9.

Here, the ALJ met his obligations under SSR 00-4p. During the hearing, the ALJ asked the VE whether any conflicts existed between her testimony and the DOT. (AR, Doc. No. 6-2 at PageID 104.) The VE stated that the DOT is "silent" about "being on your feet only four hours for light work," and she explained that she relied on her "education, training[,] and placement history" when she testified that the jobs could be performed with that limitation. (*Id.*) The ALJ discussed this conflict in his decision. (Decision, Doc. No. 6-2 at PageID 65.) The ALJ acknowledged that the DOT does not address "the reduced standing and walking limitation," and explained that he relied on "the [VE's] education and expertise" to accept her testimony regarding this limitation. (*Id.*) The ALJ therefore complied with the applicable regulation when he concluded that Plaintiff can perform the Housekeeper job, and his conclusion is supported by substantial evidence.

**B.  The ALJ Properly Applied Medical-Vocational Rule 202.17.**

Finally, Plaintiff argues that the ALJ erred because he failed to consider her borderline age situation and mistakenly applied Medical-Vocational Rule 202.17 at Step Five. (SE, Doc. No. 9 at PageID 2091-93.) Plaintiff explains that she was four months away from her fiftieth birthday as of the ALJ's September 2, 2022 decision. (*Id.* at

14

PageID 2091.) She asserts that: 1) the ALJ should have applied the sedentary Medical-Vocational rules because of the four-hour standing/walking limitation in the RFC; and 2) the ALJ should have considered her borderline age situation and applied the rule for the higher age category (Rule 201.09), which would have directed a finding of "disabled." (*Id.* at PageID 2091-92.) These assertions, too, are not well-taken.

The Medical-Vocational Guidelines, also known as the Grid Rules, apply at the final step of the sequential disability analysis. 20 C.F.R. § 404.1569. When the findings of fact as to each relevant component of the Grid Rules "coincide with all of the criteria of a particular rule," the applicable rule directs a conclusion about whether the claimant is disabled. 20 C.F.R. Subpt. P, App. 2, § 200.00; *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 528 (6th Cir. 1981). But if "any one of the findings of fact does not coincide with the corresponding criterion of a rule," then the rule "is only used as a guide to the disability determination." *Id.*; *see also Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) (when a claimant's impairments "do not precisely match any specific rule," the RFC "is used as the appropriate framework to determine whether she is disabled).

When determining which Grid Rule applies, Section 404.1563(a) of Title 20 of the Code of Federal Regulations requires an ALJ to consider a claimant's chronological age "in combination with [the claimant's] residual functional capacity, education, and work experience." The regulation addresses how ALJs should handle borderline age situations:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older

15

> age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b).

The SSA's Hearings, Appeals, and Litigation Law Manual (HALLEX) provides further guidance on this issue. *See* HALLEX I-2-2-42, 2016 WL 1167001 (S.S.A. Mar. 25, 2016).[7] The applicable HALLEX section states that the ALJ will determine whether a claim involves a borderline age situation by applying a two-prong test:

> - Is the claimant's age within a few days or a few months of the next higher age category?
> - Will the higher age category result in a decision of "disabled" instead of "not disabled"?
>
> If the answer to one or both parts of the test is "no," a borderline age situation either does not exist or would not affect the outcome of the decision. The ALJ will then use the claimant's chronological age. If the answer to both parts of the test is "yes," a borderline age situation exists, and the ALJ must decide whether it is more appropriate to use the claimant's chronological age or the higher age category.

HALLEX I-2-2-42(B), 2016 WL 1167001, at *2.

Here, Plaintiff's claim did not present a "borderline age" situation. The ALJ issued his decision on September 2, 2022. On that date, Plaintiff was approximately four months away from her fiftieth birthday—on which date she changed age categories from a "younger person" to a "[p]erson closely advanced age." 20 C.F.R. § 404.1563(c) and (d)). The SSA and courts in this circuit consider "a few days to a few months" to mean a

---

[7] The Sixth Circuit has recognized that the HALLEX provides "'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals." *Bowie v. Comm'r of Soc. Sec.*, 2008 U.S. App. LEXIS 23712, *6 (6th Cir. Nov. 5, 2008) (citing HALLEX I-1-0-1, 2005 WL 1863821 (S.S.A. June 21, 2005)).

16

period of no more than six months. *See* HALLEX I-2-2-42(B)(1); *Wohler v. Saul*, No. 1:19CV56, 2020 WL 1531296, at *13 (N.D. Ohio Mar. 31, 2020) (collecting cases). Therefore, the first prong of the SSA's two-part test for a borderline age situation is arguably met in this case.

However, the second prong of the test is not met because applying the next higher age category would ***not*** result in a determination of disability. The ALJ found that Plaintiff was limited to a reduced range of light work, and was a "younger person" with a limited education and unskilled past work experience. (AR, Doc. No. 6-2 at PageID 55, 64-65.) He therefore applied the framework of Grid Rule 202.17 to find that Plaintiff is not disabled. (Decision, Doc. No. 6-2 at PageID 65.) But even if the ALJ had categorized Plaintiff as an individual "closely approaching advanced age," Grid Rule 202.10 would have applied—and it does not direct a finding of disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.10. Because both prongs of the applicable test are not met, a borderline age situation does not exist in this case.

In an attempt to avoid this result, Plaintiff argues that the ALJ should have applied the sedentary Grid Rules because of the RFC's four-hour standing/walking limitation. (SE, Doc. No. 9 at PageID 2091, 2093.) Plaintiff cites to one case that reached this result. (*Id.* (citing *Wilkerson v. Comm'r of Soc. Sec.*, 278 F.Supp.3d 956, 959 (E.D. Mich. Sep. 28, 2017).) In *Wilkerson*, the court cited SSA's Program Operations Manual System (POMS) section DI 25015.006(E)(1)(d), which provides additional guidance on SSA's borderline age policy. 278 F. Supp. 3d at 959 (citing DI 25015.006 BORDERLINE AGE,

17

SSA POMS DI 25015.006 (effective June 22, 2024) (last updated July 2024)).[8] But nothing in the cited section—or elsewhere in this section of POMS—supports the *Wilkerson* court's conclusion that SSA directs ALJs to apply the sedentary grid rules when a claimant is limited to four hours of standing and walking.[9] The Court therefore finds *Wilkerson* to be unpersuasive.

Accordingly, the Court concludes that the ALJ complied with the applicable regulations regarding the Grid Rules. The Court further concludes that the ALJ's Step Five findings are supported by substantial evidence. As discussed above, the Grid Rules only direct a finding at Step Five if the claimant's vocational factors and RFC match all of the criteria of a particular rule. 20 C.F.R. Subpt. P, App. 2, § 200.00; *Kirk*, 667 F.2d at 528. But when a claimant's impairments "do not precisely match any specific rule," the ALJ will use the Grid Rules as only a framework for decision making. *Wright*, 321 F.3d at 615. The ALJ "must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008) (citing *Burton v. Sec'y of Health & Hum. Servs.*, 893 F.2d 821, 822 (6th Cir. 1990)).

---

[8] The Sixth Circuit has recognized that SSA's Program Operations Manual System (POMS) is merely persuasive authority and "does not have the force and effect of law." *Davis v. Sec'y of Health & Hum. Servs.*, 867 F.2d 336, 340 (6th Cir. 1989).

[9] POMS DI 25015.006 was updated in July 2024. SSA POMS DI 25015.006. Nevertheless, even the prior version, which was revised on July 6, 2017 and last updated on December 8, 2022, does not contain any support for Plaintiff's assertion. DI 25015.006 Borderline Age, SSA POMS DI 25015.006 (added July 6, 2017 & last updated December 8, 2022).

Here, the ALJ relied on "other evidence" in the form of VE testimony that Plaintiff could perform other light jobs in the national economy. (Decision, Doc. No. 6-2 at PageID 65.) As discussed above, the ALJ followed the requirements of SSR 00-4p when he questioned the VE and accepted her testimony. The ALJ properly relied on this testimony to conclude that Plaintiff is capable of performing a significant number of jobs in the national economy. *See Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (an ALJ may rely on VE testimony in response to a hypothetical question if the question accurately portrays the claimant's impairments). The ALJ's Step Five finding is therefore supported by substantial evidence.

In sum, for all of the reasons discussed above, the ALJ's Step Five conclusions are supported by substantial evidence and the ALJ complied with the applicable regulations. Plaintiff's Statement of Errors therefore lacks merit and the ALJ's decision shall be affirmed.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 9) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge